UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

ALLEN MARION,

        Plaintiff,                  Case No. 2:21-cv-206

v.                                        Honorable Maarten Vermaat

MIKE BROWN et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 7.)

        Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.      **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden Mike Brown, Hearing Officer Pat Romeri, Assistant Deputy Warden Jeffrey Howard, and Hearing Investigator Patrick Vansolten.

Plaintiff alleges that on June 17, 2021, he was given a pass to go to the KCF law library. Plaintiff states that on the date in question, the Emergency Response Team (ERT) conducted a massive shakedown, during which his itinerary was lost. Because Plaintiff's law library callout was new, he did not know what time he was to attend the law library. When he discovered that his callout was at 5:30 p.m., he was late, so Corrections Officer Neal gave Plaintiff the pass and told him to go sign-in so that he would not be removed from the callout.

Plaintiff arrived at the programs building at 6:48 p.m. and went through the metal detector. Corrections Officer LaPonsie was not at her station. Plaintiff was proceeding down the hall to the law library when Corrections Officer LaPonsie appeared and asked where he was going. Plaintiff explained, but Corrections Officer LaPonsie told him that he could not enter the law library because C-Unit was having their callout. Corrections Officer LaPonsie ordered Plaintiff to leave the building. Plaintiff then walked away, throwing his hands in the air and stating, "I'm just gone go to the window and sign off because Mr. Lee [the librarian] ain't right he be on B.S." (ECF No. 1, PageID.4.) Corrections Officer LaPonsie asked Plaintiff, "what did you say[?]" (*Id.*)

Corrections Officer LaPonsie stated that she had repeatedly ordered Plaintiff to stop for a shakedown and to show his prisoner identification card (ID), but Plaintiff claims that he did not hear her requests. Once Plaintiff did hear, he immediately turned around and attempted to

2

hand Corrections Officer LaPonsie his ID. However, Corrections Officer LaPonsie told Plaintiff that it was too late. By this time, several corrections officers arrived and surrounded Plaintiff. Corrections Officer LaPonsie told them that Plaintiff had refused a shakedown and failed to give her his ID. Plaintiff denied this, stating that he had not heard Corrections Officer LaPonsie's request. Corrections Officer LaPonsie responded that Plaintiff would have heard her if he had not been degrading her by calling officers a "bunch of dumb motherfuckers." (*Id.* at PageID.5.) Plaintiff denied making that statement and said he had been talking about the librarian. (*Id.*) Plaintiff was handcuffed and escorted to the control center for a strip search.

While at the control center, Sergeant Tuzinowski told Plaintiff that he had viewed the video and that it did not look like Plaintiff had done anything wrong. Sergeant Tuzinowski stated that it showed Plaintiff walking away and throwing his hands up halfway down the hall while Corrections Officer LaPonsie walked behind Plaintiff. Sergeant Tuzinowski stated that it also showed Plaintiff turn around right before exiting the building and attempt to hand his ID to Corrections Officer LaPonsie. Sergeant Tuzinowski told Plaintiff to plead not guilty to any misconduct written by Corrections Officer LaPonsie.

The next day, June 18, 2021, Sergeant Tuzinowski called Plaintiff out and reviewed a class II misconduct ticket for insolence/disobeying a direct order, which had been written on him by Corrections Officer LaPonsie. Sergeant Tuzinowski stated that he had told Plaintiff to plead not guilty. Sergeant Tuzinowski asked Plaintiff if he had called staff a name and Plaintiff denied that he had. Sergeant Tuzinowski noted that there was no audio on the camera system. Plaintiff was subsequently found guilty of the charges and sentenced to 10 days on toplock and 60 days loss of privileges.

Plaintiff asserts that Defendants violated his rights under the Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

4

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Fourteenth Amendment

Plaintiff claims that Defendants' handling of his class II misconduct violated his Fourteenth Amendment procedural due process rights. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted), *partially overruled on other grounds by Sandin v. Conner,* 515 U.S. 472 (1995).

Plaintiff suggests that the sanction imposed deprived him of a liberty interest because it exceeded the sanction allowed under MDOC policy. (ECF No. 1, PageID.7–9.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Courts routinely have recognized that a prisoner does not enjoy

5

any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that the sanctions for his misconduct violated prison policy therefore fails to raise a cognizable federal due process claim.

Plaintiff also suggests that, independent of the policy violation, the duration of the sanctions implicates a liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484, 487. Under MDOC Policy Directive 03.03.105, ¶ B (eff. July 1, 2018), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Plaintiff was not denied good time or disciplinary credits as a result of his Class II misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Moreover, 10 days on toplock and 60 days loss of privileges do not constitute a "significant and atypical deprivation."[1] In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones v. Baker*, 155 F.3d 810, 812–13 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); ); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

The same is true for the loss of yard and phone privileges, the loss of prison employment, and the loss of ability to participate in a religious program, all of which are expected consequences of confinement in segregation. If confinement in segregation does not implicate a

---

[1] "Toplock" is a restriction of the prisoner to his own cell, room or bunk and bunk area. Mich. Dep't of Corr., Policy Directive 03.03.105, ¶ MMM-OOO (eff. July 1, 2018). Loss of privileges encompasses a variety of activities, e.g., access to exercise facilities and the prisoner store, and possession of a radio or television. *Id.*, Attach. E.

7

protected liberty interest, it follows that placement on toplock and the loss of privileges, which are lesser punishments, do not implicate such an interest. Consequently, the duration of Plaintiff's placement on toplock and loss of privileges did not trigger a right to due process.

### B. Eighth Amendment

Moreover, to the extent Plaintiff attempts to bring a claim under the Eighth Amendment, his claim fails. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotations omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Plaintiff alleges that he was placed on toplock for 10 days and lost privileges for 60 days; however, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey*, 524 F.3d at 795. Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

### III. Request for counsel

In his complaint, Plaintiff seeks the appointment of counsel. However, because Plaintiff's complaint is properly dismissed for failure to state a claim, his request for counsel is moot.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   February 1, 2022                                       /s/ *Maarten Vermaat*
                                                                         Maarten Vermaat
                                                                         United States Magistrate Judge